## 21st DISTRICT COURT FOR THE PARISH OF TANGIPAHOA

### STATE OF LOUISIANA

NO. 2021-0001418                                         DIVISION A

### PARISH TILLMAN

### VERSUS

### JOHN DEERE CONSTRUCTION AND FORESTRY COMPANY, *individually and as a successor in interest to* JOHN DEERE INDUSTRIAL EQUIPMENT COMPANY *f/k/a* JOHN DEERE CONSTRUCTION EQUIPMENT COMPANY and MATT MARIN

FILED: __MAY 1 7 2021__                 s/TAMMY WREN        DY. CLK.

### PETITION FOR DAMAGES

**NOW INTO COURT,** through undersigned counsel, comes plaintiff, Parish Tillman a person of the full age of majority, domiciled in Orleans Parish, Louisiana, who brings this Petition for Damages against defendants John Deere Construction and Forestry Company, *individually and as a successor in interest to* John Deere Industrial Equipment Company *f/k/a* John Deere Construction Equipment Company and Matt Marin (hereinafter occasionally collectively referred to as "defendants") and alleges as follows:

### NATURE OF ACTION

1.

This is action is brought under Louisiana law for the negligent actions/violations of the Louisiana Products Liability Act of defendants that brought about injury unto Mr. Tillman when a John Deere Gator utility vehicle (hereinafter occasionally referred to as "Gator") being driven by Matt Marin collided with a tree while Mr. Tillman was riding in the front passenger seat causing Mr. Tillman to be severely injured.

### PARTIES

2.

Plaintiff herein is **PARISH TILLMAN** (hereinafter "Mr. Tillman") a person of the full age of majority domiciled in Orleans Parish, Louisiana.

3.

Mr. Tillman, at all times relevant herein, was the front seat passenger of the Gator being driven by **MATT MARIN** in Amite, Louisiana.

[1]



4.

Defendant herein is **JOHN DEERE CONSTRUCTION AND FORESTRY COMPANY,** *individually and as a successor in interest to* **JOHN DEERE INDUSTRIAL EQUIPMENT COMPNAY** *f/k/a* **JOHN DEERE CONSTRUCTION EQUIPMENT COMPANY** (hereinafter "John Deere"), which is a business corporation domiciled in the State of Delaware, who is authorized to do and doing business in the State of Louisiana, and has a registered agent in Louisiana.

5.

At all times relevant herein, John Deere manufactured the John Deere Gator utility vehicle which crashed causing Mr. Tillman's injuries.

6.

Defendant herein is, **MATT MARIN** (hereinafter "Mr. Marin"), a person of the full age of majority domiciled in Jefferson Parish, Louisiana.

7.

At all times relevant herein, Mr. Marin was the driver of the Gator which crashed causing Mr. Tillman's injuries.

JURISDICTION & VENUE

8.

This Court has personal jurisdiction over John Deere because John Deere knows or should have known its Gators are sold throughout the State of Louisiana.

9.

Specifically, John Deere knows or should have known its Gators are sold throughout the State of Louisiana as the dealer locator function on their website indicates Gator vehicles are sold at over 20 John Deere affiliated dealers in the State of Louisiana.[1]

10.

This court has personal jurisdiction over Mr. Marin because he is a domiciliary of Louisiana and was driving the Gator in Tangipahoa Parish, Louisiana.

---

[1] John Deere Gator Dealer Locator, https://dealerlocator.deere.com/servlet/country=US (*last visited* May 8, 2021).

[2]

11.

At all times herein, the Gator was being driven on property owned by Francis Guidry, Jr. in Amite, Louisiana on Lake Superior Road (hereinafter "the Guidry property").[2]

12.

At all times herein, the Gator was owned by Francis Guidry, Jr. who is not a party to this suit.

STATEMENT OF CLAIMS

13.

John Deere markets its Gator vehicles on its website as follows:[3]



**Gator™ Utility Vehicles**

RUN WITH US ON A
**Gator™ UTV**

Because you don't need just any side-by-side. You need a cargo box that performs under heavy stress and extreme conditions. A suspension backed by a history of reliability. And an engine that hustles, with or without a full load in the back. Explore more to find the right balance of power, speed, and durability in your Gator Utility Task Vehicle.

14.

John Deere markets its Gators for trail riding, fishing, and hunting.[4]

---

[2] Ward 4, Taylor Creek IV Subdivision, Section 15, Township T3S, and Range R9E.
[3] John Deere Gator Website, https://www.deere.com/en/gator-utility-vehicles/ (*last visited* May 8, 2021).
[4] John Deere Gator Website, https://www.deere.com/en/gator-utility-vehicles/ (*last visited* May 8, 2021).

15.

Specifically, John Deere's website outlines the following types of jobs for which their Gators can be used:[5]



16.

The Gator on which Mr. Tillman was the passenger bears the 13 digit product identification: M0XUVDT030194.

17.

The Gator on which Mr. Tillman was the passenger bears the 17 digit product identification: 1JDUVT2B79M030194.

18.

Upon information and belief, the trailer bed component of the Gator on which Mr. Tillman was the passenger bears the serial number M0HX0PA065306.

19.

On June 6, 2020, Mr. Tillman was sitting in the front passenger seat of the Gator while Mr. Marin was driving the Gator on a trail through the Guidry property.

20.

Mr. Marin was operating the Gator with the permission of Francis Guidry, Jr.

21.

Suddenly and without warning, Mr. Marin lost control of the Gator.

---

[5] John Deere Gator Website, https://www.deere.com/en/gator-utility-vehicles/ (*last visited* May 8, 2021).

[4]

22.

Mr. Marin attempted to apply the brakes, but the brakes did not stop the Gator.

23.

The Gator violently crashed into a tree on the Guidry property.

24.

In fact, when Mr. Marin applied the brakes, the brakes did not slow the vehicle down and the Gator pulled off the trail and struck the tree.

25.

As a result of the collision with the tree, Mr. Tillman suffered severe and debilitating injuries, which require ongoing medical treatment, including but not limited to, multiple leg surgeries.

26.

At all times herein, Mr. Tillman's height was 6'4".

## COUNT I

### FAILURE TO WARN
(Against John Deere)

27.

Mr. Tillman incorporates by reference all other paragraphs of this petition as if fully set forth herein, and further alleges his failure to warn claims under the Louisiana Products Liability Act that John Deere's Gator has potentially damaging characteristics, including but not limited to, (1) the dashboard inflicts severe and catastrophic leg injury on tall individuals in front end crashes and (2) the Gator's brakes can malfunction causing the vehicle to pull to one side when the brakes are applied. John Deere failed to use reasonable care to issue any reasonable warnings about these characteristics as outlined in the following paragraphs:

28.

At all times relevant to this litigation, John Deere engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Gator products, which are defective and unreasonably dangerous to consumers, including Mr. Tillman, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Gator products and specifically, the high risk of catastrophic injury and damage to tall occupants' legs caused by the dashboard in a crash and the malfunction of brakes causing

[5]

the vehicle to pull to one side. These actions were under the ultimate control and supervision of John Deere.

29.

John Deere researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce its Gator products, and in the course of same, directly advertised or marketed the products to consumers and end users, including Mr. Tillman, and John Deere therefore had a duty to warn of the risks associated with the reasonably foreseeable uses (and misuses) of Gators and a duty to instruct on the proper, safe use of these products.

30.

At all times relevant to this litigation, John Deere had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that its Gator products did not cause users and consumers to suffer from unreasonable and dangerous risks. John Deere had a continuing duty to instruct on the proper, safe use of these products. John Deere, as manufacturer, seller, or distributor of utility vehicles throughout the world, is held to the knowledge of an expert in the field.

31.

At the time of manufacture, John Deere could have provided warnings or instructions regarding the full and complete risks of Gator products because it knew or should have known of the unreasonable risks of harm associated with the use of these products.

32.

At all times relevant to this litigation, John Deere failed to investigate, study, test, or promote the safety of its Gator products. John Deere also failed to minimize the dangers to users and consumer of its Gator products and to those who would foreseeably use or be harmed by John Deere's Gator, including Mr. Tillman.

33.

Despite the fact that John Deere knew or should have known that Gator products posed a grave risk of harm to tall occupants in front end crashes and that the brakes could malfunction causing the vehicle to pull to one side, it failed to warn of the dangerous risks associated with their use. The dangerous propensities of its products to create catastrophic leg injuries to users in front

end crashes were known to John Deere, or scientifically knowable to John Deere through appropriate research and testing by known methods, at the time it distributed, supplied, or sold the product, and not known to end users and consumers, such as Mr. Tillman.

34.

John Deere knew or should have known that its Gator products created significant risks of serious bodily harm, as alleged herein, and John Deere failed to adequately warn consumers and reasonably foreseeable users of the risks associated with these products. Defendant has wrongfully concealed information concerning the dangerous nature Gators present to tall occupants in front end crashes and the possibility of brake malfunction.

35.

At all times relevant to this litigation, John Deere's Gator products reached the intended consumers, handlers, and users or other persons coming into contact with these products throughout the United States, including Mr. Tillman, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by John Deere.

36.

At all times relevant to this litigation, Mr. Tillman used Defendant's Gator in its intended or reasonably foreseeable manner without knowledge of its dangerous characteristics.

37.

Mr. Tillman could not have reasonably discovered the defects and risks associated with Gator products to tall individuals before or at the time of Mr. Tillman's crash. Mr. Tillman relied upon the skill, superior knowledge, and judgment of John Deere.

38.

Prior to riding in the Gator, Mr. Tillman reviewed the warning labels on the Gator and there were no warnings advising occupants of height limitations.

39.

Additionally, there were no warnings relating to brake malfunction.

40.

John Deere knew or should have known that the minimal warnings disseminated with its Gator products were inadequate, but it failed to communicate adequate information on the dangers and safe use and failed to communicate warnings and instructions that were appropriate and

adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including trail riding.

41.

The information that John Deere did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled tall individuals to understand the risks of severe leg injury in a crash. Instead, John Deere disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of severe leg injuries associated with use of Gator products by tall individuals; continued to aggressively promote the safety of its products, even after it knew or should have known of the unreasonable-risks from the use of tall individuals involved in front end crashes; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of catastrophic leg injury to tall individuals.

42.

The information that John Deere did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled occupants to understand the risks of brake failure. Instead, John Deere disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of brake failure; continued to aggressively promote the safety of its products, even after it knew or should have known of the unreasonable risks of brake failure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of brake failure.

43.

To this day, John Deere has failed to adequately and accurately warn of the true risks of Mr. Tillman's injuries associated with the use of Gators.

44.

As a result of their inadequate warnings, John Deere's Gator products were defective and unreasonably dangerous when they left the possession and/or control of John Deere, were distributed by John Deere, and used by Mr. Tillman.

45.

John Deere is liable to Mr. Tillman for injuries caused by its failure, as described above, to provide adequate warnings and data regarding the appropriate use of its Gator products and the risks associated with the use of Gator products by tall individuals in front end crashes as well as the risk of brake failure.

46.

The defects in John Deere's Gator were substantial and contributing factors in causing Mr. Tillman's injuries, and, but for John Deere's misconduct and omissions, Mr. Tillman would not have sustained his injuries.

47.

Had John Deere provided adequate warnings and instructions and properly disclosed and disseminated the risks of catastrophic leg injury to tall users in front end crashes associated with its Gator products, Mr. Tillman would have avoided the risk of developing injuries as alleged herein and Mr. Tillman would not have ridden in the Gator.

48.

Had John Deere provided adequate warnings and instructions and properly disclosed and disseminated the risks of brake failure associated with its Gator products, Mr. Tillman would have avoided the risk of developing injuries as alleged herein and Mr. Tillman would not have ridden in the Gator.

49.

As a direct and proximate result of John Deere placing its defective Gator products into the stream of commerce, Mr. Tillman has suffered and continues to suffer severe leg injuries, and has endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment. Mr. Tillman will continue to incur these expenses in the future.

## COUNT II

**DESIGN DEFECT**
(Against John Deere)

50.

Mr. Tillman incorporates by reference all other paragraphs of this petition as if fully set forth herein, and further alleges his design defect claims under the Louisiana Products Liability Act that an alternative design of John Deere's Gator was capable of preventing Mr. Tillman's

[9]

injuries; and, the likelihood that the Gator's design would cause Mr. Tillman's damage and the gravity of that damage outweighed the burden on John Deere of adopting such alternative designs and the adverse effect, if any, of such alternative designs on the utility of the product as outlined in the following paragraphs:

51.

At all times relevant to this litigation, John Deere engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Gator products, which are defective and unreasonably dangerous to consumers, users and other persons coming into contact with them, including Mr. Tillman, thereby placing Gator products into the stream of commerce. These actions were under the ultimate control and supervision of John Deere.

52.

At all times relevant to this litigation, John Deere designed, researched, developed, formulated, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold and distributed the Gator product used by Mr. Tillman as described above.

53.

At all times relevant to this litigation, John Deere's Gator products were manufactured, designed and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by Mr. Tillman.

54.

At all times relevant to this litigation, John Deere's Gator products reached the intended consumers, handlers, and users or other persons coming into contact with these products in Louisiana and throughout the United States, including Mr. Tillman, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by John Deere.

55.

John Deere's Gator products, at the time of manufacture and sale, were defective in design and unreasonably dangerous, subjecting users to increased crash risk and injury in the event of crash.

56.

John Deere's Gator products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by John Deere, were defective in design in that when they left the hands of John Deere's manufacturers and/or suppliers,

they were unreasonably dangerous because they were not as safe as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

57.

John Deere's Gator products, as researched, tested, developed, designed, licensed, formulated, manufactured, packaged, labeled, distributed, sold, and marketed by John Deere, were defective in design in that when they left the hands of John Deere's manufacturers and/or suppliers, the foreseeable risks associated with these products exceeded the alleged benefits associated with their design.

58.

John Deere's Gator product caused harm to Mr. Tillman despite the fact that he used the Gator product in the manner intended by John Deere.

59.

Therefore, at all times relevant to this litigation, John Deere's Gator products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold and marketed by John Deere, were defective in design and were inherently dangerous for their intended use due to the following:

(1) When placed in the stream of commerce, John Deere's Gator products were defective in design, and, consequently, dangerous to an extent beyond that which an ordinary consumer would expect.

(2) John Deere's Gator products were not reasonably safe as intended to be used.

(3) When placed in the stream of commerce, John Deere's Gator products were unreasonably dangerous in that they were hazardous and posed a grave risk of catastrophic leg injury to tall occupants when used in a reasonably anticipated manner.

(4) When placed in the stream of commerce, John Deere's Gator products were unreasonably dangerous in that they were hazardous and posed a grave risk of the brakes failing or causing the Gator to pull to one side while braking when used in a reasonably anticipated manner.

(5) When placed in the stream of commerce, John Deere's Gator products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

[11]

(6) John Deere did not sufficiently test, investigate or study its Gator products and, specifically, the short length between the dashboard and the seat; and, the instances of the brakes not working correctly and causing the vehicle to pull to one side.

(7) John Deere knew or should have known at the time of marketing its Gator products that tall individuals were at risk for severe leg injuries and the brakes could malfunction and/or cause the Gator to pull to one side.

(8) John Deere did not conduct adequate post-marketing surveillance of its Gator products.

(9) John Deere could have employed safer alternative designs.

(10) John Deere's Gator products were inadequately designed.

(11) The defective design of John Deere's Gator products resulted in products that were more dangerous than the ordinary consumer would expect.

(12) John Deere's Gator products failed to perform in a manner reasonably expected in light of its nature and intended function and subjected the Mr. Tillman to an unreasonable risk of harm beyond that contemplated by an ordinary person.

(13) John Deere's Gator products were insufficiently tested.

60.

At all times relevant to this litigation, Mr. Tillman used John Deere's Gator product in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

61.

Mr. Tillman could not have reasonably discovered the defects and risks associated with John Deere Gator products before the crash.

62.

Plaintiff could not have discovered the defects and dangers in the John Deere's Gator products through the exercise of due care prior to June 2020.

63.

John Deere, as the designer, manufacturer, marketer, and seller of Gator products, is held to the level of knowledge of an expert in its field, and Plaintiff did not have substantially the same knowledge.

64.

The harm caused by John Deere's Gator products far outweighed their benefit, rendering John Deere's Gator products dangerous to an extent beyond that which an ordinary consumer would contemplate. John Deere's Gator products were and are more dangerous than alternative products and John Deere could have designed its Gator products to make them less dangerous. Indeed, at the time that John Deere designed its Gator products, the state of the industry's scientific knowledge was such that a safer design was attainable.

65.

At the time Gator products left John Deere's control, there were practical, technically feasible, and safe alternative designs that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of John Deere's Gator products.

66.

The defects in John Deere's Gator products were substantial and contributing factors in causing Mr. Tillman's grave injuries, and, but for John Deere's misconduct and omissions, Plaintiff would not have sustained his injuries.

67.

As a direct and proximate result of John Deere placing its defective Gator products into the stream of commerce, Mr. Tillman has suffered and continues to suffer grave injuries, and he has endured pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment. Plaintiff will continue to incur these expenses in the future.

## COUNT III

**NEGLIGENCE**
(Against Mr. Marin)

68.

Mr. Tillman incorporates by reference all other paragraphs of this petition as if fully set forth herein, and further alleges his negligence claim under Louisiana law as outlined in the following paragraphs:

69.

Mr. Tillman avers that Mr. Marin was under a legal duty to operate the Gator in a safe and prudent manner, including but not limited to, a duty to maintain control of the Gator while

operating the Gator. This legal duty was designed to protect Mr. Tillman and those similarly situated from this type of harm, arising in this manner. The breach of this duty by Mr. Marin is a legal cause of the injuries and damages sustained by Mr. Tillman.

70.

Mr. Marin is liable unto Mr. Tillman for the following:

(1) Failing to maintain control of the Gator and/or failing to properly operate the Gator;

(2) Failing to see what he should have seen;

(3) Failing to maintain a safe and proper lookout;

(4) Failing to stop in a timely manner;

(5) Failing to exercise reasonable vigilance;

(6) Want of proper care for the safety and well-being of others;

(7) Any and all other acts of negligence which are inherent in these pleadings, or which may appear through discovery in this case, or which may be proven at trial in derogation of the laws of the State of Louisiana and the United States.

71.

As a proximate result of Mr. Marin's wrongful acts and omissions in operating the Gator, Mr. Tillman has suffered and continues to suffer severe and permanent physical and emotional injuries. Mr. Tillman has endured pain and suffering, has suffered economic losses (including significant expenses for medical care and treatment) and will continue to incur these expenses in the future.

## DAMAGES

72.

As a result of the actions of defendants, plaintiff, Mr. Tillman, has been damaged and is entitled to and seeks all damages reasonable in the premises as follows:

(a) Past, present, and future pain and suffering;

(b) Past, present, and future mental anguish, anxiety, and emotional suffering;

(c) Inconvenience and aggravation;

(d) Loss of enjoyment of life;

(e) Disfiguring and permanent injury;

(f) Past, present and future medical care and expenses;

(g) Past, present, and future lost wages and loss of future earning capacity;

[14]

(h) Travel expenses; and

(i) All other damages inherent in these pleadings, or which may appear through discovery or trial of this case.

73.

PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, Parish Tillman, prays the defendants be cited and served with the summons and petition, and after due proceedings are had, there be judgment in his favor and against defendants, John Deere Construction and Forestry Company, *individually and as a successor in interest to* John Deere Industrial Equipment Company *f/k/a* John Deere Construction Equipment Company and Matt Marin severally, jointly and *in solido*, in a full and true sum calculated to compensate plaintiff for the damages complained of herein, along with legal interest from the date of judicial demand until paid, for all costs of these proceedings, and for all other general and equitable relief.

Respectfully submitted,

MARTZELL BICKFORD & CENTOLA
**LAWRENCE J. CENTOLA, III (#27402)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)

LILLIS LAW FIRM



MICHAEL E. LILLIS (#33245)
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone:   (504) 581-9065
Facsimile:   (504) 581-7635

**SERVICE INSTRUCTIONS:**

John Deere Construction and Forestry Company, *individually and as a successor in interest to* John Deere Industrial Equipment Company *f/k/a* John Deere Construction Equipment Company
*through its registered agent*
C.T. Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

Matt Marin
6812 Ithaca Street
Metairie, LA 70003